IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

RICHARD EDWARDS, JR.,

                Plaintiff,

v.                                      CIVIL ACTION NO. 3:16-1879

McELLIOTTS TRUCKING, LLC;
DANNY McGOWAN, individually and as
an employee of McElliotts Trucking, LLC and/or
as agent of Cardinal Transport;
CARDINAL TRANSPORT, INC.,

                Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are multiple post-trial motions. For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Offset Judgment in the amount of $372,500.00 (ECF No. 257), **GRANTS** Plaintiff's Motion for Prejudgment Interest in the amount of $49,748.19 (ECF No. 245), **GRANTS** Plaintiff's Bill of Costs in the amount of $5,731.09 (ECF No. 244), **DENIES** Defendant's Motion for a New Trial (ECF No. 258), **GRANTS** Defendant's Motion to Certify Appeal (ECF No. 260), and **GRANTS** Defendant's Motion to Stay Judgment (ECF No. 246).

## I.      Background

On February 26, 2016, Plaintiff Richard Edwards filed the Complaint in this case against Defendants Danny McGowan ("McGowan"), his company, McElliotts Trucking, LLC ("McElliotts", together "McElliotts Defendants"), and Cardinal Transport, Inc. ("Cardinal").[1]

---

[1] Defendant Harold Midkiff was dismissed from the suit, as stipulated by the parties, on October 12, 2017. ECF No. 158.

*Compl.*, ECF No. 1. The cause of action arose on October 3, 2015, when Plaintiff was injured during the loading of large metal rods during their shipment. *Id.*

The 2,000-pound rod that struck Plaintiff was part of a shipment produced by Special Metals and destined for one of its customers. *McGowan Depo.*, p. 91, ECF No. 72-6. Special Metals placed the shipment with Cardinal, an interstate motor carrier that ships freight by semi-truck. *Riley Aff.*, ¶ 3, ECF No. 72-1. Cardinal leased the trucks owned by McElliotts to deliver loads negotiated by McGowan, an exclusive sales agent of Cardinal. *Sales Agency Agreement*, ECF No. 72-3; *Independent Contractor Agreement*, ECF No. 72-4.

As both a sales agent and an owner-operator lessor, McGowan solicited customers and negotiated shipping rates subject to Cardinal's policies and ultimate approval. *Sales Agency Agreement*, at 1; *Cardinal Agent's Policy Manual*, pp. 1–5, ECF Nos. 81-2, 82-1, 82-2; *Independent Contractor Agreement*, ¶ 1. McGowan's commission was contingent on placing shipments on Cardinal-leased trucks, unless Cardinal provided written permission to utilize another carrier. *Sales Agency Agreement*, at 1.

On occasion, Special Metals would place a shipment with Cardinal that did not fill an entire trailer. *McGowan Depo.*, at 68. In those instances, McGowan would haul the partial load back to his truck yard in Kenova where he would unload and store it until he collected enough shipments to fill an entire trailer. *Id.* He would then load multiple shipments on one trailer. *Id.* at 68, 88, 90. Plaintiff was injured while McGowan was reloading a trailer. *Id.* at 91. Cardinal was aware of this practice and condoned it, as its owner felt it was Cardinal's "responsibility to try and make the owner-operator as much money as possible" so as to "improve their equipment and improve their lives." *Trial Transcript 3*, p. 561, ECF No. 252.

Plaintiff alleged twelve counts of liability, including claims for vicarious liability against Cardinal under West Virginia common law and federal regulations that impose requirements on Cardinal's relationship with McGowan. *Compl.*, ¶¶ 60–87. On August 6, 2018, McElliotts Defendants entered into a settlement agreement with Plaintiff. *Settlement*, ECF No. 257-2. The settlement was for $200,000 cash, 118 acres of land in Carter County, Kentucky, and a race car chassis with a driving suit and helmet. *Id.* at 3.

Claims against Cardinal went to trial on August 7, 2018. ECF No. 217. A jury verdict was returned on August 14, 2018. *Jury Verdict*, ECF No. 231. The jury found McElliotts Defendants negligent and Cardinal vicariously liable. *Id*. Damages were awarded in the amounts of $205,811.94 for past medical bills; $700,000 for future medical bills; $60,000 for past lost earnings; $450,000 for reduced earning capacity; and a $1,000,000 each for past pain and suffering, past reduced capacity to function as a whole person, future pain and suffering, and future reduced capacity to function as a whole person. *Id.* The verdict totaled $5,415,811.94 and the Court entered a judgment order for that amount. *J. Order*, ECF No. 240. Crossclaims of indemnification and contribution remain unresolved between McElliotts Defendants and Cardinal. *Answer to Compl.*, ECF No. 12.

## II.     Legal Standard

For the sake of comprehensibility, the legal standard for each issue will be raised immediately before the discussion of each of the motions before the Court.

## III.     Discussion

At bar are issues of a judgment offset; prejudgment interest; awarding costs to the prevailing party; motions for a new trial or, alternatively, a certification for appeal; and a stay of judgment. The Court addresses each in turn.

### A. Offset Judgment

Cardinal claims it is entitled to an offset of the judgment entered against it by the amount of the settlement between Plaintiff and McElliotts Defendants. *Mot. Offset J.*, ECF No. 257. Under West Virginia law, "[w]here a payment is made, and release obtained, by one joint tort-feasor, the other joint tort-feasors shall be given credit for the amount of such payment in the satisfaction of the wrong." *Bd. of Educ. of McDowell Cty. v. Zando, Martin & Milstead, Inc.*, 390 S.E.2d 796, Syl. Pt. 5 (W. Va. 1990) (internal citations omitted). This credit is available when plaintiffs settle with parties and non-parties alike. *See Cline v. White*, 393 S.E.2d 923, 926 (W. Va. 1990).

Plaintiff settled with McElliotts Defendants for $200,000 cash, a race car chassis valued at $4500,[2] and real property valued at $168,000.[3] *Settlement*, at 3. Parties agree an offset is appropriate here. *Resp. Mot. Offset J.*, p. 1, ECF No. 267. As such, the verdict of $5,415,811.94 is offset by $372,500, reducing the final judgment to $5,043,311.94.

### B. Prejudgment Interest

Plaintiff moves the Court for prejudgment interest. *Mot. Prejudgment Int.*, ECF No. 245. The Fourth Circuit has held "state law applies to questions involving prejudgment interest in diversity cases." *United States v. Dollar Rent A Car Sys., Inc.*, 712 F.2d 938, 940 (4th Cir. 1983). West Virginia law provides for prejudgment interest on "special damages," which include "lost wages and income, medical expenses, damages to tangible personal property and similar out-of-pocket expenditures." W. VA. CODE § 56-6-31. The Court has clarified that "special damages do not as a category include future losses." *Jackson v. United States*, No. 3:14CV15086, 2015 WL

---

[2] As stipulated by Parties. ECF Nos. 267, 270.

[3] As stipulated by Parties. E-Mail from Connor Robertson, Plaintiff's Counsel, to Michael Hoffman, Chambers Clerk, and Bradley Schmalzer, Defense Counsel. (Oct. 12, 2018, 11:24 EST) (on file with author).

5174238 (S.D.W. Va. Sept. 2, 2015). "Generally, a circuit court must deduct all proper credits, payments, and set-offs before calculating prejudgment interest." *Doe v. Pak*, 784 S.E.2d 328, 333 (W. Va. 2016) (internal citations omitted). When dealing with apportioning the offset of the total judgment and how that affects the pre-judgment interest, the Supreme Court of Appeals of West Virginia has used the calculations adopted by our sister court in the Northern District as an example. *Id.* (citing *Small v. Jack B. Kelley,* No. 1:10 CV 121, 2012 WL 4056745 (N.D.W. Va. 2012) (applying West Virginia law). In *Small*, the court calculated what percentage of the total verdict the special damages represented, rounding each percentage to the nearest tenth. Then, the court calculated the same percentage of the judgment, after subtracting the offset, to determine the amount the prejudgment interest tabulation is applied. A prejudgment amount of 7% applies for claims that arose in 2015.[4] The Court applies this rate from when the cause of action accrued until the entry of the judgment. W. VA. CODE § 56-6-31.

Here, the relevant special damages total $265,811.94.[5] This represents 4.91% of the total verdict, before any offset. After the offset, the final judgment becomes $5,043,311.94, 4.91% of which is $247,626.62. This represents the proportional amount to which the prejudgment interest rate of 7% can be applied. Seven percent of $247,626.62 is $17,333.86. To account for the passage of time from the date of the accident up to the verdict, a period of 2.87 years,[6] the Court multiplies $17,333.86 by 2.87 and achieves a prejudgment interest total of $49,748.19. Thus, the Court awards Plaintiff $49,748.19 in prejudgment interest.

---

[4] ECF No. 245-1. W. VA. SUP. CT. OF APPEALS, *Determination and Dissemination of the Rate of Interest on Judgments and Decrees for the Year 2015* (Jan. 1, 2015), available at http://www.courtswv.gov/legal-community/pdfs/interest2015.pdf.

[5] $205,811.94 of medical bills and $60,000 of past lost earnings. ECF No. 231.

[6] This time period is from the accrual date, Oct. 3, 2015, to the date of judgment, Aug. 14, 2018. This is 1046 days which, when divided by 365 days per year, gives a total of 2.87 years. *See* ECF No. 245, ¶ 9.

### C. Bill of Costs

Plaintiff claims he is entitled to recover fees of the Clerk, certain deposition costs, witness fees, and docket fees. *Aff. Bill of Costs*, ECF No. 244-1. Rule 54(d) of the Federal Rules of Civil Procedure states that costs other than attorneys' fees "should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). Under United States Code, expenses that are generally recoverable by the prevailing party include fees of the clerk, fees for printed or electronically recorded transcripts necessarily obtained for use in the case, fees for witnesses, and docket fees under 28 U.S.C. § 1923. 28 U.S.C. §1920. The prevailing party bears the burden of showing the requested costs are allowable under § 1920. *Ramonas v. W. Va. Univ. Hospitals-East, Inc.*, No. 3:08-CV-136, 2010 WL 3282667, at *2 (N.D.W. Va. Aug. 19, 2010). Once the prevailing party has carried its burden, the burden shifts to the losing party. *Id.*

Here, the only portion where the amount of recoverable costs are left to determination by the Court arise with deposition transcript costs. "A district court should award costs when the taking of a deposition is reasonably necessary at the time of its taking." *LaVay Corp. v. Dominion Fed. Sav. & Loan Assoc.,* 830 F.2d 522, 528 (4th Cir.1987). The term "reasonably necessary" references the use or potential use in anticipation of trial, and "the costs of a deposition taken solely for discovery purposes are not recoverable." *Ramonas*, 2010 WL 3282667, at *9. Unless the prevailing party "demonstrates that both costs were 'necessarily obtained for use in the case', only its transcription costs are recoverable." *Cherry v. Champion Int'l Corp.,* 186 F.3d 442, 449 (4th Cir. 1999). For both to be necessary, there must be "something more than convenience or duplication to ensure alternative methods for presenting materials at trial." *Id.*

The Court notes that all of the deposition costs claimed by Plaintiff involve parties, testifying witnesses, or witnesses called by Cardinal that could reasonably be believed to be

included in the witness list at trial. *See generally Ramonas*, 2010 WL 3282667 (using factors such as inclusion in witness list, whether the deponent was a party at time of the deposition, whether deponent actually testified at trial, and whether the deposing party reasonably believed the deponent could be called at trial). However, Plaintiff offers no explanation as to why both a transcript and video deposition of Kristi Roberts were necessary in this case. Without an independent explanation for each, the Court may only find one recoverable.

"[W]hen a party notices a deposition to be recorded by nonstenographic means, or by both stenographic and nonstenographic means, and no objection is raised at that time by the other party to the method of recordation pursuant to Federal Rule of Civil Procedure 26(c), it is appropriate under § 1920 to award the cost of conducting the deposition in the manner noticed." *Cherry*, 186 F.3d at 449 (quoting *Morrison v. Reichhold Chemicals, Inc.*, 97 F.3d 460, 465 (11th Cir. 1996)). Given the video deposition was used at trial and the original notice of deposition was for a videotaped deposition, the Court grants $604.14 for the costs of the video deposition and denies the $335.17 for the written transcript. *Notice of Depo.*, ECF No. 198. This brings Plaintiff's total recoverable transcript costs to $5071.09.

As for the remaining costs claimed by Plaintiff, there is an allotment of forty dollars per day for witnesses' attendance fees. 28 U.S.C. § 1821(b). Here, Plaintiff filed for the attendance fees for six witnesses, all called at trial. *Bill of Costs*, p. 2, ECF No. 244. Additionally, docket fees for a trial are set at twenty dollars. 28 U.S.C. § 1923(a). Filing fees for a civil action in this district are $400. All of these are explicitly outlined in the 28 U.S.C. § 1923 and their amounts are uncontested. As such, the Court finds the total recoverable costs to be $5731.09, to be included in the final judgment.

### D. New Trial Under Rule 59

Cardinal argues a new trial is merited based on (1) the clear weight of the evidence, (2) the sufficiency of the jury instructions, and (3) the amount of the verdict. *Memo. Supp. Mot. New Trial*, pp. 1–2, ECF No. 259. Arguments for each are addressed herein the subdivsions of each issue raised.

#### 1. Clear Weight of the Evidence

Cardinal contends the clear weight of the evidence runs contrary to the verdict for two reasons. First, Cardinal alleges McElliotts Defendants were unequivocally proven to be independent contractors, not employees. *Id.* Second, Cardinal alleges the loading and unloading of trucks was unquestionably outside the scope of employment. *Id.* Both issues Cardinal raised previously; the Court's determination here uses similar rationale by which they were previously addressed. *See Memo. Opinion & Ord. Summ. J.*, ECF No. 121.

Federal Rules provide "[t]he court may, on motion, grant a new trial . . . after a jury trial for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1). When ruling on a Rule 59 motion for a new trial on the basis of the weight of the evidence, "a trial judge may weigh the evidence and consider the credibility of the witnesses and, if he finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, he must set aside the verdict, even if supported by substantial evidence, and grant a new trial." *Poynter by Poynter v. Ratcliff*, 874 F.2d 219, 223 (4th Cir. 1989) (internal citations omitted). The decision to grant or deny a Rule 59(a) motion for a new trial rests within the sound discretion of the trial judge. *Id*. (internal citations omitted).

*a. Statutory Employees and the Master-Servant Relationship*

Under 49 C.F.R. § 376.12(c)(1), there exists a rebuttable presumption of employment between carriers and owner-operator lessors.[7] This presents a neat symmetry with West Virginia common law, which requires a *prima facie* showing of an agency relationship before the burden shifts to the party invoking an independent contractor defense. *Zirkle v. Winkler*, 585 S.E.2d 19, 22 (W. Va. 2003) (quoting *Sanders v. Georgia-Pacific Corp.*, 225 S.E.2d 218, 222 (W. Va. 1976)). Under West Virginia law, it is the power to control the process of the work that is determinative of whether a master-servant relationship exists. *Robertson v. Morris*, 546 S.E.2d 770, 773 (W. Va. 2001).

McGowan's business with Cardinal stretched from soliciting customers and negotiating shipping rates to leasing his trucks to Cardinal and finding drivers to deliver the shipment to its destination. At each of these stages, however, Cardinal had the exclusive power to exercise meaningful control over McElliotts Defedants' operations, even beyond processes mandated by federal regulation. Evidence on the record of Cardinal's significant control over McElliotts Defendants' operations appears throughout the *Sales Agency Agreement*, the *Independent Contractor Agreement*, and *Cardinal's Agency Policy Manual.*

The *Sales Agency Agreement* is supportive of Cardinal's control over McElliotts Defendants, including provisions that: label McGowan as an agent; prevent McGowan from soliciting business outside the umbrella of Cardinal during his employment and for one year after

---

[7] Though the history and interpretation of this regulation is storied, the Court previously determined the "rebuttable presumption" standard to have the most reasonable application, as it balances the ICC's desire to have classifications of the owner-operator-carrier relationship ultimately turn on state law and Congress' intent to "thwart[] abuses by carriers who would lease equipment from independent contractors who [are] not . . . regulated." *Bays v. Summit Trucking, LLC,* 691 F.Supp. 2d. 725, 731 (W.D. Ky. 2010) (quoting *Price v. Westmoreland*, 727 F.2d 494, 495 (5th Cir. 1984)). *See also Memo. Opinion & Ord. Summ. J.*, pp. 11–16, ECF No. 121.

(*Agency Agreement*, at 3); imposes a confidentiality requirement on McElliotts Defendants (*Id.* at 2–3); mandate any money collected by McElliotts Defendants is the sole property of Cardinal until commission is remitted to the agent (*Id.* at 3); and require Cardinal to approve any shipping on non-Cardinal trucks (*Id.* at 1). McGowan was the exclusive agent of Cardinal and had been for fourteen years. *Id.*; *Trial Transcript 2,* at 376. Additionally, the Sales Agency Agreement incorporates over one hundred pages of binding company policy which touch on every aspects of an agent's business. *Agency Agreement*, at 2.

*Cardinal's Agency Policy Manual* includes aspects which exercise great control over McGowan's ability to negotiate contracts. Potential customers must go through a credit check and meet standards set by Cardinal. *Policy Manual*, at 1, 4–5. All shipping rates are determined by Cardinal and a contract is only final once Cardinal provides a finalized contract to the agent. *Id.* at 4–5. Billing is also largely handled by Cardinal. *Id.* at 14. Outside of federal regulations, Cardinal elects to prohibit the transport of certain goods. *Policy Manual*, at 47.

Further advancing the notion of Cardinal's pervasive control, McGowan testified to Cardinal's imposition of requirements to contact Cardinal dispatch on a daily basis and how he must comport with Cardinal policies off the road. *Trial Transcript 2*, pp. 318–321, ECF No 251. McGowan was required to log all on-duty time, which included "all time loading or unloading a commercial motor vehicle." *Plaintiff's Trial Exhibit 33*, ECF No. 239-21. McGowan was further bound by Cardinal's alcohol policy prohibiting any drinking within ten hours of being on duty. *Plaintiff's Trial Exhibit 35*, ECF No. 239-23. All unattended vehicles were required to be kept behind a secured, gated area and have a pin lock when dropped. *Plaintiff's Trial Exhibit 34*, ECF. No. 239-22. Overall, Cardinal exercises a heavy hand administratively, by dictating a process of

filing log sheets, physical examination certificates, and accident reports. *Independent Contractor Agreement*, ¶ 5(a)(ii)-(iii)).

As Cardinal is keen to point out, there is evidence refuting Cardinal's own characterization of McGowan as an "agent". However, the Court does not find the evidence supporting Cardinal's position to overcome the rebuttable presumption of a master-servant relationship. Cardinal exercised control over the process of McElliotts day-to-day operation of trucking at all points from pick-up to delivery. As such, the jury's determination that McElliotts Defendants were employees of Cardinal stands.

### b. The Scope of Employment

Cardinal also attempts to excise liability by narrowing the scope of the question at hand. West Virginia common law defines the scope of employment with three elements: (1) the conduct is of the kind he or she is employed to perform; (2) the conduct occurs within the authorized space and limits; and (3) it is actuated, at least in part, by a purpose to serve the master. *W. Va. Reg'l Jail and Corr. Facility Auth. v. A.B.*, 766 S.E.2d 751, 770 (W. Va. 2014). The West Virginia Supreme Court of Appeals has held "[w]here a master sends forth an agent, he is responsible for the acts of his agent within the apparent scope of his authority, though the agent oversteps the strict line of his duty." *Nees v. Julian Goldman Stores, Inc.*, 146 S.E. 61, 62 (W. Va. 1928). An employee may be acting within the scope of employment even if the act is unauthorized when the act "can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of that act or a natural, direct or logical result of it." *Levine v. Peoples Broadcasting Corp.*, 140 S.E.2d 438, 442 (W. Va. 1965); *see also Travis v. Alcon Labs. Inc.*, 504 S.E.2d 419, 431 (W. Va. 1998) ("[A]n employer may be liable for the conduct of an employee, even if the specific conduct is unauthorized or contrary to express orders, so long as the employee is acting within his general authority and for

the benefit of the employer."). Whether an act is a natural incident to one's employment is a "relative term" that "requires a consideration of surrounding circumstances . . . ordinarily determined by the jury." *Griffith v. George Transfer & Rigging, Inc.*, 201 S.E.2d 281, 288 (W. Va. 1973).

The Court found no evidence Cardinal directly controlled the process of McElliotts Defendants unloading and reloading shipments. *Trial Transcript 3*, pp. 527–28, ECF No. 252. However, Cardinal was aware of this practice itself and at least implicitly approved it. There was also substantial evidence that such practice served Cardinal's goals. *Id.* at 561. This practice served Cardinal's customer: Special Metals wanted its products moved out of its yard quickly even though the shipment would not transport to its final destination until a consolidated load could be gathered. Thus, Cardinal's customer would still obtain lower shipping costs.

Moreover, the Court has explicitly made clear that control over one particular step in the process is not determinative of whether an employee was acting within the scope of his or her employment. *Memo. Summ. J.*, at 9. Once a master-servant relationship is established, the question of scope is one properly submitted to the jury. The Court finds conflicting evidence that is susceptible to contrary but reasonable inferences, and the evidence does not clearly weigh against the verdict. As the Court has determined, "[i]t is not a far stretch to deem loading a truck a natural incident to shipping freight by truck. Indeed, it is fair to say that it is necessary." *Id.* at 10. The evidence was clear that McGowan's practice of temporarily storing and then consolidating shipments was known to Cardinal and served the mutual interests of Cardinal and its customer.

For the same substantive reasons offered in the Court's order denying Cardinal's Motion for Summary Judgment, the Court finds the verdict was not against the clear weight of the evidence and denies Cardinal's Motion for a New Trial on these grounds.

*2. Jury Instructions*

Cardinal submits the jury instructions were flawed in the consistency of delivery and incorrect in both the scope of the independent contractor defense and the explanation of the application of 49 C.F.R. § 376.12, thus meriting a new trial. *Memo. Supp. Mot. New Trial*, at 2.

Courts have "considerable discretion in choosing the specific wording of [jury] instructions." *Figg v. Schroeder*, 312 F.3d 625, 640 (4th Cir. 2002) (internal quotations omitted). A party seeking a new trial based on erroneous jury instructions must establish "(1) it made a proper and timely objection to the jury instructions; (2) those instructions were legally erroneous; (3) the errors had prejudicial effect; and (4) it requested alternative instructions that would have remedied the error." *Hafco Foundry & Mach. Co., Inc. v. GMS Mine Repair & Maint., Inc.*, No. CV 1:15-16143, 2018 WL 1582728, at *7 (S.D.W. Va. Mar. 30, 2018) (internal citations omitted). The determination of whether instructions were legally erroneous is a question of law. *Id.* When reviewing an instruction for legal error, the Court reads the instructions as a whole. *Id.* Furthermore, "to preserve an objection to the instructions to the jury, a party is required to point out specifically the nature of the objection." *Mattison v. Dallas Carrier Corp.*, 947 F.2d 95, 112 (4th Cir.1991). Failure to raise a specific objection results in a waiver of the challenge to the instruction. *Belk, Inc. v. Meyer Corp.*, 679 F.3d 146, 153 (4th Cir. 2012).

*a. Consistency of Instructions*

While case law surrounding inconsistency of instructions deals primarily with disparities between final instructions and the law, the curative property of corrected final instructions remains uncontested. "That an incomplete instruction, perfected by additional instructions, is neither improper nor cause for reversal, is too well settled to require the citation of authority." *Connolly v. Bollinger*, 67 S.E. 71, 73 (W. Va. 1910).

Here, Cardinal contests the use of the phrase "with regard to the trucking operations" to define the scope of liability in their independent contractor defense, as stated in the final instructions. Previously, in non-binding preliminary instructions to describe to the jury the evidence and claims they were about to hear, the Court used the phrase "with regard to the loading and unloading of trailers." *Memo. Supp. Mot. New Trial*, at 10–12. As discussed below, the Court holds the latter to be an incorrect statement of law. Furthermore, the Court does not believe these preliminary inconsistencies to have a bearing on the merits of the final jury instructions, but any impropriety that may have existed was cured by a proper final instruction.

### b. Final Independent Contractor Defense Instruction

Cardinal contends the instructions submitted to the jury were an incorrect statement of law which broadened the scope of its liability. Cardinal cites the *Shaffer* case as determinative. *Id.* (citing *Shaffer v. Acme Limestone Co., Inc.*, 524 S.E.2d 688 (W. Va. 1999). However, both the facts of *Shaffer* and Cardinal's analysis thereof miss the mark.

In *Shaffer*, the plaintiff attempted to hold a quarry vicariously liable for a death that occurred during the shipment of its stone. There, the trucking company was found to be an independent contractor. *Id.* at 697. The court determined the quarry did not retain the proper power of control over "the work in question" required to find a master-servant relationship.

In the instant case, Cardinal claims *Shaffer* requires the Court to find Cardinal had no control over the "work in question." As a baseline, Cardinal misidentifies this work as the "loading and unloading of trucks." The *Shaffer* court noted the quarry engaged the trucking company "solely for the purpose of delivering stone." *Id.* Here, Cardinal engaged McElliotts Defendants for the purpose of delivery, during which Plaintiff was injured. It is improper to carve out a single step within the work for which one is employed to determine the existence of a master-servant

relationship; this is a question of one's scope of employment. Here, the work in question refers to Cardinal's control over McElliotts Defendants' delivery processes.

Additionally, *Shaffer* is not properly analogous, as it deals with a trucking company attempting to hold the manufacturer of a product liable. Compared to the instant case, this would be the equivalent of Plaintiff attempting to hold Special Metals vicariously liable for the harm incurred. Instead, Plaintiff looks to hold Cardinal, the carrier, accountable for the actions of their owner-operator lessor. This difference makes such a question properly put before a jury under West Virginia law. *See Zirkle v. Winkler*, 585 S.E.2d 19, 28 (W. Va. 2003) (stating the independent contractor issue in *Shaffer* would have clearly been a jury issue if the facts had been "that the trucking company (not the quarry) had tried to avoid accountability for the results of a truck driver's negligence by attempting to make all of its truck drivers 'independent contractors[.]'")

*Shaffer* points out the analytical error committed by Cardinal, in which Cardinal attempts to put the cart before the horse by asking jurors to decide McElliotts Defendants' scope of employment before determining whether they were, in fact, employees. Cardinal's analysis of scope is premature, and thus incorrect. The "work in question" was McElliotts relationship to Cardinal in their trucking operations and the instructions submitted to the jury were the correct statement of law; the Court properly instructed the determination of scope of employment to come subsequent to the determination of employment in the jury instructions. *Trial Transcript 4*, p. 696–97, ECF No. 253.

### c. 49 C.F.R. § 376.12(a)

As for the final point regarding the jury instructions, Cardinal contests how instructions on 49 C.F.R. § 376.12(a) were submitted to the jury, claiming statutory definitions of "operation" and "equipment" should have been included. *Memo. Supp. Mot. New Trial*, at 13–17.

During the final charge conference held on Friday, August 20, 2018, the Court took up the matter of final jury instructions, which included the application of 49 C.F.R. § 376.12(a). The Court previously held this regulation applied to the instant case and created a rebuttable presumption of a master-servant relationship. *Trial Transcript 4*, at 674–87. During the conference, counsel for Cardinal objected to the use of the statutory term "equipment" and asked for it to be substituted with "truck." *Id.* at 679. Though Cardinal did submit jury instructions asking for a definition of "operation" to be included, it did not make a specified objection on this matter. *Reply Mot. New Trial*, p. 9, ECF No. 271 (offering only the fact that Cardinal submitted jury instructions including the definition of "operation" as evidence of an objection). Solely relying on the submission of alternate jury instructions without a particular objection on the record is insufficient to preserve a challenge. *Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 154 (4th Cir. 2012) ("Th[e] general invocation of proposed jury instructions is insufficient to preserve the issue for [appellate] review."); *see also City of Richmond v. Madison Mgmt. Group, Inc.,* 918 F.2d 438, 453–54 (4th Cir.1990); *Schuler v. Branch Banking & Tr. Co.*, No. CIV. 1:08CV378, 2010 WL 1257959, at *1 (W.D.N.C. Mar. 26, 2010) (denying a motion for a new trial on the basis of jury instruction because they were not objected to and thus not appealable). As such, any challenge as to the inclusion of the definition for "operation" was waived by Cardinal.

However, contrary to Plaintiff's contention, the Court does not find a challenge to the use of the word "truck", in lieu of "equipment", as waived. Though counsel for Cardinal raised the objection, Cardinal again conflates the issue of the master-servant relationship and scope of employment. As the jury instructions clearly convey when addressing scope, the jury was instructed to determine whether the "loading and unloading" was in the scope of employment; the reference to leased "equipment" is easily understood and did not require the use of the word "truck"

in its stead. Furthermore, Cardinal acknowledges that it was sufficiently established at trial that the trailer and forklift at issue were not subject to the lease agreement. *Memo. Supp. Mot. New Trial*, at 16. This further evidences the jury was not confused when the instructions utilized the statutory term "equipment." Considered in their entirety, the jury instructions were not confusing and gave proper statements of law to allow the jurors to decide the relationship between Cardinal and McElliotts Defendants, and *then* whether the injuries occurred within the scope of employment. As such, the Court denies the Motion for a New Trial on basis of the jury instructions.

    *3. Remittitur*

In its final argument for a new trial, Cardinal asserts the jury verdict lacks an evidentiary basis, was excessive, and was based on the passion of the jury to serve as punitive damages based on the Plaintiff's Counsel's remarks. *Memo. Supp. Mot. New Trial*, at 17–21.

    *a. Evidentiary Basis*

Cardinal claims there is no evidentiary basis for the $1,000,000 awarded each for future pain and suffering and future loss of capacity. *Memo. Supp. Mot. New Trial*, at 19. In determining whether there is sufficient evidence to support a jury verdict, the Court should "(1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved." *Orr v. Crowder*, 315 S.E.2d 593, Syl. pt. 5 (W. Va. 1983).

With regard to future pain and suffering, Dr. Vaglienti testified at trial that Plaintiff was diagnosed with phantom limb syndrome with a grinding pain, generic leg pain, stump pain, post-traumatic stress disorder, depression, and status post below-knee amputation on the right. *Trial*

*Transcript 1*, p. 65, ECF No. 250. These conditions will cause pain and require management for the rest of Plaintiff's life. *Id.* at 68–69.

As for future loss of capacity, there is evidence in the record of Plaintiff's potential functions being curtailed on two fronts. First, he is greatly limited in his ability to do the same kind of manual labor he conducted when he was injured, as he can only lift ten pounds from the floor to his waist and cannot work bent over, kneeling, or climbing a ladder. *Trial Transcript 2*, at 239–40. Second, Plaintiff testified that he successfully raced cars, as sponsored by McGowan, and won money.[8] *Trial Transcript 3*, at 428, 433. However, Plaintiff has not raced since the accident and his ability to competitively race is in doubt. *Trial Transcript 2*, at 232; *Trial Transcript 1*, at 81.

Viewing the evidence in the light most favorable to the prevailing party, with any conflicting evidence as being determined in Plaintiff's favor, the Court finds an evidentiary basis for the award. Any attack on whether this evidence is sufficient for the amount awarded goes to whether or not the verdict was excessive.

### b. Excessive Verdicts

Under Rule 59(a) of the Federal Rules of Civil Procedure, a court may order a new trial *nisi remittitur* if it "concludes that a jury award of compensatory damages is excessive." *Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658, 672 (4th Cir. 2015) (internal quotations omitted). "[A] district court sitting in diversity must apply state law standards when it considers a Rule 59(a) motion for a new trial based upon the alleged excessiveness of the jury's compensatory damage award." *Konkel v. Bob Evans Farms Inc.*, 165 F.3d 275, 280 (4th Cir. 1999). To determine whether a verdict was excessive, the West Virginia Supreme Court of Appeals has long

---

[8] It is noted that this money was turned over to McGowan for sponsoring Plaintiff. *Trial Transcript 3*, at 433. It is a reasonable inference by the Court and the jury that Plaintiff could have retained potential earnings from successful future endeavors in this field.

held that "[c]ourts must not set aside jury verdicts as excessive unless they are monstrous, enormous, at first blush beyond all measure, unreasonable, outrageous, and manifestly show jury passion, partiality, prejudice or corruption." *Miller v. Allman*, 813 S.E.2d 91, 107 (2018) (*citing Addair v. Majestic Petroleum Co.*, 232 S.E.2d 821 (W. Va. 1977)).    "There is no measure by which the amount of pain and suffering endured by a particular human can be calculated, and no standard of value which can be applied. *Crum v. Ward*, 122 S.E.2d 18, 23 (W. Va. 1961).

Here, Cardinal focuses its argument on the $4,000,000 awarded to Plaintiff in non-economic damages, divided into four sub-categories. *Memo. Supp. Mot. New Trial*, 17–19. As persuasive authority, Cardinal cites two cases.

First, Cardinal invokes *Harris v. State*. 223 So. 3d 695, 709 (La. App. 5 Cir. June 15, 2017). In *Harris*, the court reduced a jury verdict of $5,000,000 for pain and suffering and $1,000,000 for loss of enjoyment to $437,500 and $62,500, respectively, for a Plaintiff who suffered a below-the-knee loss of limb. *Harris*, 223 So. 3d at 709. However, the court there considered factors not present in this case. Namely, the injured party was sixty-one and suffered from diabetes and hypertension. *Id*, at 708. Here, Plaintiff is expected to have a longer lifespan and did not suffer from similar chronic illnesses.

Cardinal also cites *Firmes*, where the court there reduced a multi-million-dollar award for future pain and suffering on a similar injury. *Firmes v. Chase Manhattan Auto. Fin. Corp.*, 50 A.D.3d 18 (N.Y.S.2d 2008).  However, this reduction resulted in an award of $1,500,000 for past pain and suffering and $3,500,000 for future pain and suffering over 50.1 years of future life expectancy. *Firmes*, 50 A.D.3d at 28. This is a larger award when compared to the instant case.

As a matter of course, the Court will not engage is some statistical calculation of a nationwide sampling of cases to determine how much an injured person's missing limb is worth,

especially when Cardinal's cited evidence cuts against its own argument.[9] The West Virginia Supreme Court of Appeals has directed that "[a] jury verdict . . . may not be set aside as excessive by the trial court merely because the award of damages is greater than the trial judge would have made." *Sargent v. Malcomb*, 146 S.E.2d 561, 566 (W. Va. 1966). Jury verdicts are "entitled to considerable deference," and should not be disturbed "as long as that award is supported by some competent, credible evidence going to all essential elements of the award." *Reed v. Wimmer*, 465 S.E.2d 199 (W. Va. 1995). Upon a review of the proceedings, the Court finds the damages awarded by the jury supported by the evidence and are not monstrously excessive.

### c. Passion and Prejudice of the Jury

Finally, Cardinal points to comments by Plaintiff's Counsel during closing arguments as evoking the passion and prejudice of the jury. *Memo. Supp. Mot. New Trial*, at 19–21 When assessing the nature of a party's closing remarks, "wide latitude is accorded counsel in arguments before a jury[.]" *Crum v. Ward*, 122 S.E.2d 18, 26 (W. Va. 1961). However, "such arguments may not be founded on facts not before the jury, or inferences which must arise from facts not before the jury." *Id.* Challenges alleging inflammatory remarks cannot be raised for the first time in post-trial motions. "It is the universal rule that during closing argument counsel cannot as a rule remain silent, interpose no objections, and after a verdict has been returned seize for the first time on the point that the comments to the jury were improper and prejudicial." *Dennis v. Gen. Elec. Corp.*,

---

[9] Though a wrongful death case, the West Virginia Supreme Court of Appeals in *Roberts v. Stevens Clinic Hosp., Inc.* reduced a $10,000,000 award to $3,000,000 after "substantial collegial discussion." 345 S .E.2d 791 (W. Va. 1986). In present day dollars, this would be an award equal to $6,985,773.48. *See CPI Inflation Calculator*, U.S. DEPT. OF LABOR, available at https://www.bls.gov/data/inflation_calculator.htm. Though the Court will not engage in statistical tabulation, it would appear that under West Virginia Law, awards of this magnitude are not considered "monstrous."

762 F.2d 365, 366–67 (4th Cir. 1985) (internal citations and quotations omitted). A motion for a new trial should be denied "where the moving party has failed to timely object to the alleged impropriety giving rise to the motion[,]" unless "exceptional circumstances exist such as when the error is so obvious or so serious that the public reputation and integrity of the judicial proceeding is impaired." *Id.* at 367.

Here, Cardinal acknowledges its failure to raise this objection. *Reply Mot. New Trial*, at 14. Though it claims this point is raised not a basis for a new trial, but rather evidence of an excessive verdict, the Court finds that Cardinal waived its objection to Plaintiff's Counsel's statements as the basis for a new trial. Furthermore, the Court has addressed the issue of excessiveness and its rationale as to why this verdict does not appear to be "monstrous".

However, Cardinal raises a narrower issue of violations of the Court's rulings on motions in limine. *Memo. Supp. Mot. New Trial*, at 20–21. "Motions in limine preserve issues that they raised without any need for a renewed objection at trial. *Rice v. Cnty. Health Ass'n,* 203 F.3d 283, 286 (4th Cir. 2000). "In order for a violation of an in limine motion to serve as the basis for a new trial, the order must be specific in its prohibitions, and violations must be clear." *Honaker v. Mahon*, 552 S.E.2d 788, 795 (W. Va. 2001) (internal quotations omitted).

When determining whether a jury's verdict may be set aside due to a party's violation of a trial court's ruling on a motion in limine, courts consider the following factors: (1) whether the evidence was deliberately introduced or solicited through a line of questioning, or whether the violation of the court's order was inadvertent; (2) whether the violation must have been reasonably calculated to cause, and probably did cause, the rendition of an improper judgment; (3) the inflammatory nature of the violation such that the violation prejudiced the substantial rights of the party seeking to set aside the jury's verdict; (4) whether the violation created jury confusion,

wasted jurors' time, or wasted judicial resources; and (5) whether the challenged evidence was presented to the jury directly, or merely by an oblique reference. *Id.* at 795–96. "If the violation was so inflammatory and prejudicial in its nature that it could not have been cured by an instruction to disregard, the jury's subsequent verdict may be set aside." *Id.* at 796.

Here, Cardinal alleges violations of the granted motions to (¶ "H") exclude references to any non-testifying persons available to both parties as a witness, (¶ "I") preclude Plaintiff from mentioning that Cardinal failed to call a potential witness to testify, (¶ "J") preclude improper arguments as to damages, and (¶ "M") exclude any references to Cardinal's size, wealth, or financial condition. *Memo. Opinion & Ord. Mot. Limine*, p. 5, ECF No. 129.

The only evidence submitted concerning non-testifying individuals, as addressed by ¶¶ "H" and "I", centers on Plaintiff's Counsel's reference to Cardinal's failure to call an economic expert witness. *Memo. Supp. Mot. New Trial*, at 20. No non-testifying witness was named, and Plaintiff's argument was really that Cardinal did not contest certain damages. Nor does Cardinal claim its expert witness was available to both parties. Accordingly, the Court finds no violation of ¶ "H".

Paragraph "I" did in fact preclude Plaintiff from mentioning that Cardinal failed to call a potential witness to testify. Plaintiff's Counsel did precisely that, without leave of Court. *Trial Transcript 4*, at 723. While the Court admonishes Plaintiff's Counsel for not following proper order, the Court is left to interpret an unclear request from Cardinal in this motion in limine. Cardinal requested that this prohibition take effect, save for four instances, including when "a reasonable basis exists to support an inference that such witness would have testified adversely to Cardinal." *Omnibus Mot. Limine*, p. 8, ECF No. 102. The cases and commentary cited by Cardinal discuss instances where specific named parties were not called at trial. *Id.* Yet the last case cited by Cardinal in their motion is particularly illustrative. "While the inference which may result from

the failure to call an available material witness or to produce other particular evidence has often been denominated a "presumption," it is generally held that such failure raises no presumption of law at all, but merely authorizes the jury to draw an unfavorable inference of fact." *McGlone v. Superior Trucking Co., Inc.* 363 S.E.2d 736, Syl. Pt. 3 (W. Va. 1987).

Here, the lack of Cardinal's evidence on economic losses affords the jury a negative inference. Such a carveout appears to be envisioned by Cardinal in their motion. Furthermore, this comment was a one-off reference on an issue initially raised at trial by counsel for Cardinal. *Trial Transcript* 2, at 275. With the lack of a specific prohibition on this matter and the factors weighing against a new trial, the Court finds this violation insufficient to merit a new trial.

Paragraph "J" precluded improper arguments as to damages. Reviewing Cardinal's memorandum reveals this motion in limine was aimed at preventing Plaintiff from suggesting a specific dollar amount or comparable commodity as a means to measure damages, as prohibited by West Virginia Law. *Id.* at 8–9 (citing *Crum v. Ward*, 122 S.E.2d 18 (W. Va. 1961)). However, the trial transcript does not show counsel suggested a sum of money, either by exact dollar amount or reference. Therefore, the Court finds no violation of the motion in limine as set forth in ¶ "J".

Paragraph "M" excluded any references to Cardinal's size, wealth or financial condition. This is aimed at the "profits or assets at the time of the subject incident". *Omnibus Mot. Limine*, at 11. A review of the record finds this information was solicited for the purpose of establishing the scope of Cardinal's relationship with Special Metals. *Trial Transcript 3*, at 588. Though Plaintiff's Counsel did apply this evidence when addressing the issue of damages in closing arguments, the Court finds that this information was already properly before the jury, and a single comment does not establish sufficient grounds to overturn the jury verdict. Furthermore, the Court does not read this particular motion in limine as specifically prohibiting a general characterization of Cardinal's

relationship with a customer, especially when it goes to the scope of Cardinal's involvement with a party to the injury. As such, the Court finds no violation of the motion in limine's ¶ "M".

### E. Certificate of Appeal

Cardinal requests by motion a certification allowing an appeal under Rule 54(b). *Alt. Mot. Cert. Appeal*, ECF No. 160. Without such a finding and certification by the Court, pending cross claims prevent appeal of the instant judgment. Rule 54(b) provides an order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties "may be immediately appealed if the district court: (1) expressly directs entry of judgment as to those claims or parties; and (2) expressly determines that there is no just reason for delay." *Baird v. Palmer*, 114 F.3d 39, 42 (4th Cir. 1997); *see also Braswell Shipyards, Inc. v. Beazer East, Inc.*, 2 F.3d 1331, 1335–36 (4th Cir. 1993) (calling it "crucial" that the district court state "clear and cogent findings of fact" on Rule 54(b) certifications either on the record or in its order).

To determine whether there is "no just reason for delay," the Court should consider: "(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like." *MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 855 (4th Cir. 2010).

Here, all of Plaintiff's claims against Cardinal have been resolved by this order and the judgment is final. The only unadjudicated claims deal with indemnification between co-defendants and are unlikely to moot any potential appellate review, nor cause any issue of liability between

Plaintiff and Cardinal to be reviewed a second time. In fact, a ruling on appeal may settle the issue of whether crossclaims would even need to be addressed by the Court.

However, Cardinal makes a bizarre request in asking to only certify the rulings for the motions for a new trial, offset, and prejudgment interest, as addressed in this order. *Reply Alt. Mot. Cert. Appeal*, p. 3, ECF No. 265. The Fourth Circuit has clarified that "reviewable orders granting or denying motions for new trials are not separately appealable," and "appellate review may be obtained *only* by filing a notice of appeal from the entry of final judgment." *Massey-Ferguson Credit Corp. v. Webber*, 841 F.2d 1245, 1248 n.4 (4th Cir. 1988). As Cardinal ultimately wants to be able to appeal these matters and the Court independently finds there is no just reason for delay, the Court enters a judgment consistent with this opinion and order and finds the claims between Cardinal and Plaintiff to be final and appealable.

### F. Stay Judgment

As a final matter, Cardinal requests a stay of judgment during its appeal. *Mot. Stay J.*, ECF No. 246. When an appeal is taken, Rule 62(d) provides for a stay as a matter of right where a sufficient supersedeas bond is given by the appellant. *See Am. Mfrs. Mut. Ins. Co. v. Am. Broad.-Paramount Theatres, Inc.*, 87 S. Ct. 1, 3 (1966); FED. R. CIV. P. 62(d). For a supersedeas bond to be "sufficient", it must cover the entirety of the judgment presently granted. *See CSX Transp., Inc. v. Peirce*, No. 5:05CV202, 2013 WL 5674850, at *2 (N.D.W. Va. Oct. 17, 2013) (finding a supersedeas bond sufficient when it covered the judgment, plus awarded interest, and did not need to include attorney's fees in the amount as they had not been awarded at the time the bond was posted) ("This Court will not now engage in speculation concerning the amount of attorneys' fees it may or may not award, or the amount of attorneys' fees that CSX will incur as a result of the appeal.").

Plaintiff objects on three grounds: (1) Cardinal has not satisfied the factors set forth in *Hilton v. Braunskill*, 481 U.S. 770 (1987); (2) Cardinal's bond is insufficient in amount and mode; and (3) Cardinal has waived its ability to move for a new trial, thus an appeal cannot occur.

To swiftly dispatch of the first issue, this objection is not applicable here. In *Hilton*, the Supreme Court was iterating factors that dealt with determining the stay of an injunction in a federal *habeas* case. *Hilton*, 481 U.S. at 776 (citing subparagraph (c) of FED R. CIV. P. 62). Indeed, the Supreme Court found it generally accepted that "a party taking an appeal from the District Court is entitled to a stay of a money judgment as a matter of right if he posts a bond in accordance with FED. R. CIV. P. 62(d) and 73(d)[.]" *Am. Mfrs. Mut. Ins. Co.*, 87 S. Ct., at 3.

 Also inapplicable is Plaintiff's third objection in this matter. Plaintiff argues, out of turn, on the issue of Cardinal's ability to file a rule 59 motion. This should have been raised in response to Cardinal's Motion for a New Trial, not on a collateral motion. Notwithstanding, there is no requirement as laid out by the Fourth Circuit where a party must file a Rule 50 Motion to be able to file a Rule 59 Motion. Cases cited by Plaintiff in the brief deal with the scope of appellate review, not the district court's ability to hear such motion. *Resp. Mot. Stay J.*, p. 7, ECF No. 261 (citing *Nichols v. Ashland Hosp. Corp.,* 251 F.3d 496 (4th Cir. 2001)). In fact, the authority cited affirms the districts court's determination to not grant a motion for a new trial, even when the parties did not file a Rule 50 motion. *See Nichols,* 251 F.3d at 502 (affirming the district court's denial of a motion for a new trial where appellant did not file a motion for judgment as a matter of law); *Ihnken v. Jenkins*, 677 Fed.Appx. 840, 844–45 (4th Cir. 2017).

As a final matter meriting clarification, Plaintiff attacks the sufficiency of Cardinal's bond. Plaintiff alleges a bond must be cash and must cover post-judgment interest. *Resp. Mot. Stay J.*, at 3. Here, Cardinal has submitted a bond for $5,456,643.25. *App.* Bond, ECF No. 246-1. The final

judgment, including the offset, prejudgment interest, and bill of costs totals $5,098,791.22. As iterated above, there is no need to speculate as to the costs beyond the final judgment for a bond to be sufficient. The Court finds this amount sufficient for a supersedeas bond.

As to the use of a bond, Plaintiff claims this district requires a check to be deposited with the Clerk's office. *Resp. Mot. Stay J.*, at 3 (citing *Daugherty v. Ocwen Loan Servicing*, 220 F.Supp.3d 728 (S.D.W. Va. 2016). However, the requirements stated in *Daugherty* were given after the Court had found there was not a sufficient supersedeas bond when a parent company filed a blanket surety document without a specific amount. Here, Cardinal used an independent insurer providing a bond with a specific dollar amount.

Furthermore, the Court does not read Rule 62 itself as requiring a cash payment. Indeed, production of cash runs counter to the very concept of a "bond". A bond is "[a] certificate or evidence of a debt on which the issuing company or governmental body promises to pay the bondholders a specified amount." *Bond*, BLACK'S LAW DICTIONARY (6th ed. 1990). A supersedeas bond is merely "a bond required of one who petitions to set aside a judgment or execution and from which the other part may be made whole if the action is unsuccessful." *Supersedeas Bond*, BLACK'S LAW DICTIONARY (6th ed. 1990). Here, the Federal Rules of Civil Procedure allows for non-cash bonds to be sufficient for supersedeas bonds.[10] Accordingly, pursuant to Rule 62(d), Cardinal is entitled to a stay of the judgment and the Court so grants it.

---

[10] For further clarification, the revisions to the Federal Rules, which will took effect on Dec. 1, 2018, changed the wording to include a right of stay "by bond or other appeal." The advisory committee notes the new rule's text explain this revision "makes explicit the opportunity to post security in a form other than a bond." FED. R. CIV. P. 62 advisory committee's note to 2018 amendment. This discretion on what constitutes a sufficient bond on appeal is also noted in Black's Law Dictionary, which states that appeal bonds allows for "[t]he court in its discretion may require the appellant to file a bond or provide other security to ensure payment of costs on appeal." *Appeal Bond*, BLACK'S LAW DICTIONARY (6th ed. 1990).

## IV.    Conclusion

As explained above, the Court **GRANTS** Defendant's Motion to Offset Judgment in the amount of $372,500.00 (ECF No. 257), **GRANTS** Plaintiff's Motion for Prejudgment Interest in the amount of $49,748.19 (ECF No. 245), **GRANTS** Plaintiff's Bill of Costs in the amount of $5731.09 (ECF No. 244), **DENIES** Defendant's Motion for a New Trial (ECF No. 258), **GRANTS** Defendant's Motion to Certify Appeal (ECF No. 260), and **GRANTS** Defendant's Motion to Stay Judgment (ECF No. 246).

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:          December 11, 2018

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE